# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Isaiah Neal,

      Plaintiff

v.

Frank Kendall, et al.,

      Defendants

Case No.: 2:20-cv-02281-JAD-NJK

**Order Granting Summary Judgment in Favor of the Defendants and Closing this Case**

[ECF Nos. 70, 72]

Pro se plaintiff Isaiah Neal sues the United States, the U.S. Department of the Air Force, and U.S. Air Force Secretary Frank Kendall (collectively, the Air Force) for retaliation under Title VII of the Civil Rights Act. Neal and the Air Force crossmove for summary judgment. The Air Force contends that Neal hasn't established a causal link between his protected activity and his termination and that, even if he has, he cannot prove that the legitimate, nondiscriminatory reasons it proffered for terminating him are pretextual. Neal argues that he has made out his prima facie retaliation case and that the Air Force's stated reasons for terminating him are mere pretext. Because Neal hasn't shown that there is a triable issue of fact as to whether the Air Force's legitimate reasons for firing him are pretextual, I deny Neal's motion, grant summary judgment for the Air Force, and close this case.

## Background

The Air Force hired Neal as a realty specialist in July 2016.[1] The position had a maximum two-year probationary period and could be "noncompetitively converted to a

---

[1] ECF No. 71-1 at 2.

permanent appointment" if he completed his program satisfactorily.[2]  The Air Force describes this as a "formal Air Force intern position[] established under the PALACE ACQUIRE (PAQ) program," and the "purpose of this position [was] to serve as an advanced trainee in the Realty discipline."[3]  As part of this program, Neal's first-level supervisor David Cruikshank completed regular PAQ evaluations of Neal's job performance.[4]  The evaluation reports list four possible ratings—exceeded requirements, met requirements, needs improvement, and unsatisfactory—across ten different job-related "elements," such as work effort, problem solving, working relationships, and communications.[5]

In his first, informal evaluation report, Neal received "needs improvement" ratings for six elements, though this was "an initial and informal" evaluation intended to "help focus current progress."[6]  In October 2016, Cruikshank completed Neal's first formal evaluation, which covered his first three months with the Air Force.[7]  Neal received "needs improvement" ratings in two categories but "met requirements" ratings in the other eight.[8]  Cruikshank observed that, although Neal had made some improvements, he needed to extend "more effort . . . to foster team and interpersonal/professional relations with coworkers" and that he could do more to

---

[2] *Id.*

[3] *Id.*

[4] *Id.* at 45–51.

[5] *Id.* at 46.

[6] *Id.*  Neal didn't receive ratings for the other four elements.  *Id.*

[7] *Id.* at 47–48.

[8] *Id.*

"enhance personal productivity."[9]  For his overall recommendation for Neal, however, Cruikshank checked off "Satisfactory or Above, Continue in Program."[10]

But Cruikshank's next PAQ evaluation report was far more critical of Neal's performance.[11]  In that January 2017 report, which covered the preceding three months, Cruikshank gave Neal "unsatisfactory" ratings for four elements and "needs improvement" ratings for three.[12]  Cruikshank included a two-page written summary with this report that touched on all of the rated elements, provided specific examples of problems with Neal's performance, and described how he needed to improve.[13]  Cruikshank marked Neal's overall recommendation as "Marginal, Conditional Continuation," and he was placed on a 60-day probation.[14]

One month later, Neal submitted an informal discrimination complaint to the Air Force's Equal Employment Office (EEO), primarily alleging racial discrimination.[15]  Cruikshank learned of this complaint at some point between February 21, 2017, and March 8, 2017.[16]  On March 28, 2017—shortly after Neal's 60-day probation concluded—Cruikshank gave Neal a "Termination During Probation" memorandum, which stated that Neal was going to be fired for "unprofessional conduct and unsatisfactory performance."[17]  In the memo, Cruikshank noted

---

[9] *Id.* at 48.

[10] *Id.*

[11] *See* ECF No. 70-2.

[12] *Id.* at 2.  Neal didn't get ratings for the other three elements.  *Id.*

[13] *Id.* at 5–6.

[14] *Id.* at 3, 6.

[15] ECF No. 77–2 at 2–3, 4; *see also* ECF No. 70-3.

[16] ECF No. 77-2 at 7, 18–19.  Exactly when Cruikshank became aware of this complaint is disputed.  *See id.*

[17] ECF No. 70-4 at 2.

that, during Neal's 60-day probational period, he had failed to improve on four of the seven elements that he received low ratings on in his prior evaluation.[18]  Cruikshank also listed several instances of unprofessional conduct that factored into the decision to fire Neal.[19]

The next day, Neal filed a formal discrimination complaint with the EEO, once again contending that he was discriminated against based on race.[20]  He also requested that his second-level supervisor Douglas Fitzpatrick review the termination decision.[21]  Fitzpatrick performed this review but ultimately agreed that Neal should be fired "for the reasons stated in . . . the termination letter."[22]  Fitzpatrick's "Notice of Termination Review Decision" memorandum, dated March 31, 2017, noted that Neal's termination from federal service was effective immediately as of that day.[23]

## Discussion

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[24]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[25]  If the moving party satisfies its

---

[18] *Id.*

[19] *Id.* at 2–3.

[20] ECF No. 70-5.

[21] ECF No. 70-4 at 3.

[22] ECF No. 77-2 at 14.

[23] *Id.*

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[25] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[26]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), he "must come forward with evidence [that] would entitle [him] to a directed verdict if the evidence went uncontroverted at trial."[27]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[28] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[29]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[30]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the

---

[26] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 819 (9th Cir. 1995).

[27] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[28] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

[29] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[30] *Celotex*, 477 U.S. at 322.

1  court must consider the appropriate evidentiary material identified and submitted in support

2  of"—and against—"both  motions before ruling on each of them."[31]

3  **I.      Neal's March 29, 2017, EEO complaint doesn't give rise to a retaliation claim.**

4          Retaliation claims under Title VII require the plaintiff to demonstrate that (1) he engaged

5  in a protected activity and (2) his employer took an adverse-employment action against him

6  (3) because of that protected activity.[32]  The Ninth Circuit has "said that '[c]ausation sufficient to

7  establish the third element of the prima facie case may be inferred from . . . the proximity in time

8  between the protected action and the allegedly retaliatory employment decision.'"[33]  But a causal

9  link can't be established without evidence that the adverse-employment-action decisionmaker

10  knew that the plaintiff engaged in the protected activity, regardless of any such closeness in

11  time.[34]

12          Neal argues that the formal EEO complaint he filed on March 29, 2017, constitutes

13  "protected activity"[35] and that the March 31 memo that officially ended his position was an

14  adverse-employment action that followed this "protected conduct by two days," thereby

15  establishing a causal connection between the two events.[36]  The Air Force highlights that Neal

16  filed this formal complaint the day after he received notice that he would be terminated via the

17

---

18  [31] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair

19  Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

     [32] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006); *see also Ray

20  v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

     [33] *Cornwell*, 439 F.3d at 1035 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

21
     [34] *See id.*; *see also Douglas v. DeJoy*, 848 F. App'x 245, 247 (9th Cir. 2021) (quoting *Cohen v.

22  Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)) (noting that establishing a decisionmaker's
     knowledge of protected activity "is 'essential' to show causation").

23  [35] ECF No. 72 at 9.

     [36] *Id.* at 14.

March 28 memo.[37]  It argues that the adverse-employment action at issue—Neal's termination—was therefore not subsequent to the filing of this complaint.[38]

The only action that might qualify as an adverse-employment action that followed Neal's March 29, 2017, formal EEO complaint is the March 31 memo.  And it appears that it did officially terminate his position as of that date "for the reasons stated in" the March 28 memo after Fitzpatrick had reviewed Neal's written response.[39]  Though I question whether the issuance of the March 31 memorandum is a discrete adverse-employment action rather than merely the culmination of a single adverse-employment action (Neal's termination) that began on March 28, 2017, that distinction is ultimately irrelevant.  Any temporal-proximity based inference of a causal link between the formal complaint and the March 31 memo or Neal's termination is largely if not entirely undermined by the fact that the decision to terminate him was made several days earlier.  And more critically, Neal hasn't presented any evidence that Fitzpatrick knew that Neal had filed the formal complaint when the March 31 memo went out to Neal.  On the contrary, Neal's evidence indicates that his managers didn't know that he had filed a formal complaint until May 2017—long after the Air Force had terminated him.[40]  So Neal's retaliation theory based on the formal EEO complaint fails because he hasn't established a causal link between this protected activity and the March 31 memo or his termination.

---

[37] *See* ECF No. 70-4.

[38] ECF No. 76 at 11.

[39] ECF No. 72-2 at 16.

[40] *Id.* at 10.

7

## II.     Neal's objections to the Air Force's so called "new defenses"

Neal objects to various portions of the Air Force's summary-judgment briefing, asserting that they contain new, unpled affirmative defenses.[41]  Neal contends that these "defenses" will "severely" prejudice him because he was "ambushed" by and "had no time to prepare and conduct further discovery" on them, and because they will give the Air Force "an unfair advantage in this case."[42]  The Air Force counters that Neal is really just objecting to arguments that it raises rather than actual affirmative defenses, nothing requires them to plead all potential future arguments with specificity in an answer, and Neal had fair notice of all of the arguments it raises in its summary-judgment briefing.[43]

"A defense [that] demonstrates that [a] plaintiff has not met [his] burden of proof is not an affirmative defense."[44]  "An affirmative defense is defined as a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true."[45]  It therefore "absolves a defendant of liability 'even whe[n] the

---

[41] *See* ECF No. 77 at 2–9; ECF No. 79 at 2–9.

[42] *See, e.g.*, ECF No. 77 at 2–9.

[43] ECF No. 78 at 2–3.

[44] *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *Flav–O–Rich v. Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988)).

[45] *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)); *see also Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) (quoting *Roberge v. Hannah Marie Corp.*, 1997 WL 468330, at *3 (6th Cir. 1997) ("[A]n affirmative defense . . . is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven.").

1  plaintiff has stated a prima facie case for recovery.'"[46]  And the defendant has the burden of

2  proving an affirmative defense.[47]

3       Neal's objections fall into two categories.  Some are to the Air Force's *McDonnell*

4  *Douglas Corporation v. Green*[48] burden-shifting arguments that it had a legitimate reason to

5  terminate him and that he has not established, and cannot establish, that reason is pretextual.[49]

6  But the Supreme Court's decision in *McDonnell Douglas* merely provides an analytical

7  framework used in Title VII cases.[50]  None of its various steps are affirmative defenses, as

8  evidenced by the fact that the burden of persuasion (unlike the burden of production) never shifts

9  to the defendant.[51]  And even if the Air Force's argument that it had a legitimate, nonretaliatory

10 reason for terminating Neal were construed as an affirmative defense, the Air Force put Neal on

11 notice that it would be making such an argument in its answer, in which it asserts that it "did not

12 retaliate against Plaintiff"; any action it took "with respect to [Neal's] employment was taken for

13 legal, valid[,] and proper reasons"; and it "had legitimate reasons for its actions."[52]

14      Neal also objects to various statements of fact that the Air Force makes and its

15 descriptions or characterizations of various pieces of evidence.[53]  But these too aren't unpled

---

16

17 [46] *Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) (quoting *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005)).

18 [47] *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007) (quoting

19 *Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993)) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense.").

20 [48] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[49] *See, e.g.*, ECF No. 77 at 5–7; ECF No. 79 at 5–7.

21 [50] Neal acknowledges that *McDonnell Douglas* is "precedent" and mandates performing a

22 "Burden Shift analysis."  ECF No. 79 at 16.

[51] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

23 [52] ECF No. 47 at 11.

[53] *See* ECF No. 77 at 2–9; ECF No. 79 at 2–9.

affirmative defenses.  They are just facts and evidence that the Air Force cites in support of the arguments it is making within the *McDonnell Douglas* framework.[54]  My decision here is based on the facts themselves, not attorney argument, so Neal isn't prejudiced by the way the Air Force portrays certain facts or documents.  And Neal participated in discovery, so he cannot now claim to be "ambushed" by the Air Force's reliance on particular documents that he too had access to and, in many instances, submitted in support of his own summary-judgment briefing.[55]  So Neal's objections to various arguments, facts, and exhibits that the Air Force presents within the confines of the *McDonnell Douglas* framework are without merit.

### III.   The Air Force proffered legitimate, nondiscriminatory reasons for Neal's termination.

Motions for summary judgment in the employment-discrimination context are subject to the *McDonnell Douglas* burden-shifting framework.[56]  "Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[57]

---

[54] Neal also objects to several facts on the grounds that they are not facts, but rather evidence, or that they are "background information" and thus not material.  *See* ECF No. 77 at 9.  But facts are based in evidence, and a fact doesn't have to be material to be mentioned in summary-judgment briefing.  Neal also raises a number of merits-based disputes about the validity of what certain documents say and the bases for decisions that the Air Force made.  *See id.* at 9–15.  To the extent these "disputes" are relevant to the decision here, they are addressed *infra*.

[55] *Compare, e.g.*, ECF No. 77 at 4 (Neal objecting to the Air Force's discussion of his informal EEO complaint and the March 28 memo) *with* ECF No. 72-2 at 5–7 (the informal EEO complaint that Neal submitted in support of his motion for summary judgment) *and id.* at 14–15 (the March 28 memo that Neal submitted in support of his motion for summary judgment).

[56] *See Yartzoff*, 809 F.2d at 1375.

[57] *Reeves*, 530 U.S. at 143 (internal quotation marks omitted).

The *McDonnell Douglas* analysis involves three steps, the first of which requires the employee to establish a prima facie case of retaliation.[58]  "Establishment of a prima facie case in effect creates a presumption that the employer unlawfully [retaliated] against the employee."[59]  Once the prima facie case has been established, "[t]he burden of production, but not persuasion, then shifts to the employer,"[60] who then "must articulate a legitimate, non-retaliatory reason for the challenged action."[61]  The plaintiff must then show that the basis was either a mere pretext for engaging in the unlawful conduct or that the proffered explanation is unworthy of credence.[62]  He can meet this burden by presenting circumstantial evidence that is "specific and substantial."[63]

Assuming without deciding that Neal has established his prima facie case, the Air Force has articulated legitimate, nonretaliatory reasons for terminating Neal: his poor quarterly evaluation, the 60-day plan he was subsequently put on, and his failure to sufficiently improve during that 60-day probationary period, as well as various instances of inappropriate workplace conduct.[64]  It also has "produc[ed] sufficient evidence to support [this] non[retaliatory]

---

[58] *See id.* at 802.

[59] *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

[60] *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000); *Burdine*, 450 U.S. at 254.

[61] *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)) (applying Title VII retaliation framework to Title IX retaliation case).

[62] *Burdine*, 450 U.S. at 256; *Reeves*, 530 U.S. at 147; *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir. 2003).

[63] *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).  The plaintiff may also provide direct evidence of such pretext, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), but there is no direct evidence in this case, so I need not consider this issue.

[64] *See* ECF No. 70 at 7.

explanation for its decision"[65] in the form of the quarterly evaluation and the March 28 memo which states that these are the reasons it was firing Neal.[66]  Neal does dispute the veracity and persuasiveness of the reasons that the Air Force has proffered, but such arguments go to causation and pretext.[67]  So the Air Force has put forth a legitimate, nondiscriminatory reason for terminating Neal.

**IV.    Neal fails to identify genuine material factual issues regarding whether the Air Force's reasons for terminating him are pretextual.**

Once the defendant articulates a legitimate, nonretaliatory reason "to explain the challenged action, the burden shifts back to [the plaintiff] to show that the defendant's articulated reasons are pretextual."[68]  A plaintiff can prove pretext "by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise unbelievable, or . . . by showing that the unlawful discrimination more likely motivated the employer."[69]  And he can "meet the burden to show pretext using either direct or circumstantial evidence."[70]  "But when the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment."[71]  Neal points to several issues that he argues demonstrate pretext, but none of them—either individually or in

---

[65] *Reeves*, 530 U.S. at 143.

[66] *See* ECF No. 70-2; ECF No. 70-4.

[67] *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (A defendant need only produce evidence that, if "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.").

[68] *See Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023).

[69] *Chuang*, 225 F.3d at 1127 (citing *Godwin*, 150 F.3d at 1220–22).

[70] *Coghlan*, 413 F.3d at 1094–95 (citing *Godwin*, 150 F.3d at 1220).

[71] *Id.* at 1095 (quoting *Godwin*, 150 F.3d at 1222).

the aggregate—are sufficient to meet the "specific and substantial" standard and create a genuine dispute of material fact as to pretext.

### A.    Temporal proximity

Neal repeatedly highlights the temporal proximity between his February 17, 2017, informal EEO complaint[72] and his firing a month and a half later and argues that this is indicative of pretext.[73]  The Air Force counters that the significance of this closeness in time is undermined by the context because it had already placed Neal in a 60-day probation period following a poor quarterly evaluation, he failed to improve during that time, and he was terminated shortly after the probation period had concluded.[74]  Temporal proximity is a relevant consideration when assessing pretext.[75]  But courts tend to find that this alone—while potentially sufficient to satisfy the relatively low-threshold showing of causation for a prima facie retaliation claim—is not enough to establish pretext, especially when the proffered reason for the termination undermines the significance of the temporal proximity.[76]

Viewed in isolation, the span between Neal's informal EEO complaint and his termination a month and a half later is short enough that it could arguably meet his prima facie causation burden at the summary-judgment stage.[77]  But evidence consistent with both the Air Force's proffered reason and the timing of its decision diminishes the significance of this closeness in time.  Cruikshank gave Neal a subpar evaluation, rating him as "unsatisfactory" or

---

[72] ECF No. 72-2 at 5–7.

[73] *See, e.g.*, ECF No. 72 at 12; ECF No. 77 at 20.

[74] *See* ECF No. 78 at 4–5.

[75] *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014); *Brown v. City of Tucson*, 336 F.3d 1181, 1187–88 (9th Cir. 2003).

[76] *Curley*, 772 F.3d at 634; *Brown*, 336 F.3d at 1187–88.

[77] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

"needs improvement" across all rated categories in January 2017,[78] prior to Neal's engagement

in any protected activity.  Cruikshank also recommended that Neal continue only on a

"conditional" basis, placed him on 60-day probation, and described a number of areas in which

he needed to improve over that period.[79]  And the termination memorandum reflects that Neal

was fired shortly after the expiration of his 60-day probation because he failed to sufficiently

improve during that period.[80]  In light of this record of poor performance predating Neal's

protected activity, the timing of his termination falls far short of a specific and substantial

showing of pretext.

### B.      Basis of January 2017 performance evaluation

Neal focuses much of his attention on the subpar-performance evaluation that ultimately

led to the Air Force placing him on a 60-day probation, which he characterizes as "unwarranted

and unjustified."[81]  He argues that the Air Force's "whole case relies heavily on [this] one

unsupported [p]erformance [e]valuation," but there was "no basis in fact" for this

underwhelming assessment of his work performance, which, according to Neal, establishes

pretext.[82]  The Air Force responds that Neal is simply trying to rehash his dismissed

discrimination claim, and whether he should "have been given a poor quarterly evaluation or

placed on a 60-day probation in the first place" are issues that "are not before the Court."[83]

---

[78] ECF No. 70-2 at 2.  Neal's supervisors did not provide ratings for three of the ten listed categories.  *Id.*

[79] *Id.* at 3–6.

[80] *See* ECF No. 70-4; ECF No. 72-2 at 16.

[81] ECF No. 79 at 15.

[82] ECF No. 77 at 23; *see also* ECF No. 79 at 21.

[83] ECF No. 76 at 13.

The overarching problem with Neal's argument is that the low ratings he received for this evaluation couldn't have been retaliatory because they predate any protected activity. So even if he could establish that they were "unwarranted and unjustified," this would do little to support the argument that Neal needs to be making here—that the Air Force's stated reasons for firing him (his poor performance and conduct) were mere pretext for retaliation because he filed an EEO complaint. And even if I were to look past that fundamental hurdle, Neal hasn't submitted sufficient evidence that these poor ratings were uncalled for. He first highlights that two prior evaluations were "satisfactory."[84] But his performance being satisfactory at some earlier time doesn't mean that it remained so.

Plus these two earlier evaluations aren't quite as rosy as Neal portrays them. In his first informal evaluation, he received "needs improvement" ratings in six out of ten categories and did not receive ratings for the other four.[85] In his second evaluation, he was still rated as "needs improvement" in two categories, though he "met requirements" in the other eight.[86] The evaluation's "Problem Areas" section notes that Neal had made "improvements" but still needed to put more effort into a couple areas.[87] In short, these prior evaluations are not so inconsistent with his January 2017 evaluation that they support an inference that there was some other nefarious purpose behind his January 2017 ratings.

---

[84] ECF No. 79 at 21.

[85] ECF No. 77-2 at 46. The evaluation notes that ratings for the other four categories were "pending." *Id.*

[86] *Id.* at 47.

[87] *Id.* at 48.

Neal also focuses on the absence of "evidence or any other documentation" that supports the poor marks he received in the January 2017 evaluation.[88]  But at the summary-judgment stage a plaintiff must submit evidence to raise a genuine dispute of material fact—merely highlighting the absence of certain types of documents, without more, is insufficient.[89]  If, for example, Neal could point to evidence that poor performers within his group typically received additional writeups or demerits in their employment files beyond the reoccurring quarterly performance assessments, that inconsistency might give rise to an inference that some other unarticulated reason factored into the poor ratings from January 2017.  But Neal has offered no such evidence.  And while he claims that "[i]t is unknown where these low ratings came from and why he received them,"[90] the underlying reasoning for them (supported by a number of specific examples) is detailed in the evaluation itself.[91]

## C.    Reasons for termination

Relatedly, Neal takes issue with the reasons the Air Force provided for his termination. He first argues that that the Air Force "failed to articulate [a] consistent reason for" his termination.[92]  According to Neal, it provided multiple explanations for his termination that are "inconsistent," and this inconsistency is indicative of pretext.[93]  The Air Force does reference

---

[88] ECF No. 77 at 23; ECF No. 79 at 21.

[89] *See Celotex*, 477 U.S. at 322.

[90] ECF No. 77 at 23.

[91] ECF No. 77-2 at 50–51.

[92] ECF No. 79 at 22.

[93] *Id.*

both his  performance and unprofessional conduct in the termination memoranda.[94]  But Neal doesn't explain how these reasons are inconsistent with one another rather than just cumulative.[95]

Neal also contends that the reasons that the Air Force provided are unjustified and thus unworthy of credence.  As to the Air Force's critiques of his performance, Neal notes that he didn't receive any "performance disciplinary notes" or have any "professional conduct problems in his work file."[96]  But these assertions ignore his January 2017 quarterly evaluation report, which heavily critiqued Neal's job performance across many areas and placed him on 60-day probation.[97]  To the extent that Neal is contending that there are not more performance-related writeups beyond his quarterly evaluation, this argument fails for the reasons discussed in the preceding section.  It is Neal's burden to come forth with "specific and substantial" evidence of pretext.  Merely highlighting that the Air Force didn't present more evidence to support its reasons for terminating him beyond the poor evaluation, 60-day probation, and termination memoranda documenting his failure to sufficiently improve isn't enough to satisfy this standard and create a genuine issue of fact as to pretext when there isn't any evidence that this sequence of events was atypical.

---

[94] *See* ECF No. 77-2 at 12–14.

[95] Neal cites *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424 (1st Cir. 2000), for the proposition that an employer offering "inconsistent post-hoc explanations for its employment decisions is probative of pretext."  ECF No. 79 at 22.  But the *Dominguez-Cruz* court explained that "[a] company may have several legitimate reasons to dismiss an employee" and that it is "when a company, at different times, gives different and arguably inconsistent explanations" that "a jury may infer that the articulated reasons are pretextual."  202 F.3d at 432.  Here, however, the Air Force referenced both his job performance and workplace conduct at the time of his termination, and Neal doesn't explain why these two intertwined issues are inconsistent with one another.  *See* ECF No. 77-2 at 12–13.

[96] ECF No. 79 at 22.

[97] ECF No. 77-2 at 49–51.

Neal also attacks the Air Force's contention that he failed to adequately improve during his 60-day probation,[98] highlighting a February 16, 2017, email that PAQ coordinator Kimberly Davis sent to Cruikshank in which she noted that she was "glad to hear that Neal's performance [had] improved."[99]  But the email doesn't identify what specific areas Neal had improved in, how he had improved, or how pronounced any such improvements were.[100]  And the prospect that Neal may have improved in some areas isn't inconsistent with the March 28 memo because it specifically notes that Neal hadn't improved in only four of the seven total problem "elements"[101] identified in the January 2017 evaluation.[102]  So this single, vague email from a month and a half before Neal was fired, mentioning some unquantified improvement in Neal's job performance, is insufficient to create a triable issue of fact as to pretext.[103]

---

[98] ECF No. 77 at 24; ECF No. 79 at 23.

[99] ECF No. 77-2 at 69.  Neal didn't submit the email from Cruikshank that Davis was replying to and in which Cruikshank purportedly said Neal had improved.  *Id.*

[100] *Id.*

[101] *Id.* at 12.

[102] *Id.* at 49.  The January 2017 evaluation rated Neal as either needing improvement or unsatisfactory in work effort, adaptability to work, problem solving, working relationships, communications, work productivity, and customer service.  *Id.*  But the March 28 memo, which summarized the reasons for Neal's termination, only notes that he "failed to improve . . . on elements of work effort, adaptability to work, working relationships, and communication," *id.* at 12, thus implying that he did improve in problem solving, work productivity, and customer service during his 60-day probation.

[103] In his reply brief, Neal also mentions an incident in which, according to Neal, Cruikshank yelled at him and told some of Neal's coworkers that he wouldn't make it in the program.  ECF No. 79 at 24.  This purportedly occurred several days after Neal filed his informal EEO complaint, though it is disputed whether Cruikshank even had knowledge of the complaint at this time.  *See* ECF No. 77-2 at 7, 18–19.  But even drawing all reasonable inferences in Neal's favor this doesn't amount to "substantial" evidence of pretext because it at most implies that this incident was a reaction to Neal's complaint (though Cruikshank's reason for yelling and those statements could just as easily have been Neal's documented performance issues) yet Neal wasn't fired for more than a month after this incident allegedly occurred (and after his 60-day probation concluded), he didn't experience any adverse-employment actions in the interim, and Fitzpatrick—who wasn't mentioned in the complaint—ratified his termination.

Regarding inappropriate workplace conduct, Neal notes that he didn't receive any "disciplinary notes" on "unsatisfactory professionalism" and "did not have any professional conduct problems in his work file."[104]  But the March 28 memo itself describes several instances of inappropriate workplace conduct, at least one of which predated any of Neal's protected activity.[105]  Neal's prior quarterly evaluations also indicate that Neal had a history of issues surrounding his interactions with coworkers.[106]  His January 2017 evaluation, for example, rates him as "unsatisfactory" in working relationships and communications,[107] references specific conflicts with a coworker, and notes that he generally "[a]void[ed] contact and communication with coworkers."[108]  An October 2016 evaluation report similarly notes under its "Problem Areas" section that Neal needed to make "more effort . . . to foster team and interpersonal/professional relations with coworkers."[109]  Even the email that implies Neal's job performance had improved suggests that he also had issues with "interpersonal skills" and describes ongoing "communication conflicts between Neal and certain co-workers."[110]  The January 2017 evaluation also notes that Neal's coworkers perceived him as "reluctant to contribute to work assignments which may be perceived as menial work,"[111] which is consistent with an incident described in the March 28 memo in which Neal purportedly refused to complete

---

[104] ECF No. 79 at 22.

[105] ECF No. 77-2 at 12.

[106] *Id.* at 45–51.

[107] *Id.* at 49–51.

[108] *Id.* at 50.

[109] *Id.* at 47.

[110] *Id.* at 69.

[111] *Id.* at 50.

a task that involved placing printed photos into frames.[112]  In short, the examples of unprofessional conduct described in the March 28 memo aren't inconsistent with issues documented prior to Neal's engagement in protected activity, so this also doesn't establish "specific and substantial" evidence of pretext.

### D.  Guidelines used to assess performance

Neal argues that Cruikshank didn't rate him "according to the AF Core Document" despite being required to do so and instead used "his own subjective means for" Neal's evaluations.[113]  Neal adds that the Air Force's "deviation from its own standard procedures" is evidence of pretext.[114]  He submits a document titled "Air Force Core Personnel Document," which purports to contain a "statement of the major duties, knowledges, skills, and abilities, responsibilities, physical and performance requirements of his position.[115]  The document lists the "critical" duties those holding this position must perform, as well as "standards" for discharging those duties.[116]  It also contains information on how the position is classified and graded.[117]

Despite Neal's assertions, however, it is not at all clear that this document is supposed to be used as a tool for regular employee-performance evaluations within Neal's program.  Unlike the PAQ evaluation reports, there is no clear "rating" system, sections to summarize progress, program-specific recommendation checklists, or boxes to identify "problem areas" in an

---

[112] *See id.* at 13.

[113] ECF No. 77 at 23–24.

[114] *Id.*

[115] ECF No. 77-2 at 70.

[116] *Id.* at 71–72.

[117] *Id.* at 73–74.

employee's performance.[118]  It reads more as a general job-description and classification document than anything else.[119]  And while Neal has argued that the Air Force should have used this document—rather than the PAQ evaluation reports—to perform regular employee evaluations for participants in his program, he hasn't presented any actual evidence that directly supports this proposition.[120]

But even if Neal is correct that this personnel document should have been used, the Air Force's potential deviation from its standard procedures is only relevant to the extent that it implies the legitimate reason it proffered for terminating him is pretextual.  And it doesn't here because Neal's supervisors were using the PAQ evaluation reports throughout his entire tenure and thus before he first engaged in protected activity.[121]  There also isn't evidence in the record that the Air Force used the personnel document (or anything other than the PAQ evaluation reports) for evaluating other realty specialists in Neal's program.  So even if the Air Force did deviate from standard evaluation procedures, any inference of pretext that this discrepancy might give rise to is undermined by uncontroverted evidence that the Air Force consistently used this method of assessment throughout Neal's tenure.

---

[118] *Compare id.* at 46–51 (PAQ evaluation reports) *with id.* at 70–74 (Air Force core personnel document).

[119] *Id.* at 71, 73–74.

[120] Indeed, the Air Force contends that it "substantially followed" Air Force standards in evaluating Neal's job performance.  *See* ECF No. 77-2 at 22.  Neal's reference to this "core" personnel document doesn't suggest otherwise.

[121] ECF No. 77-2 at 46–51.

**Conclusion**

Because the Air Force has shown legitimate, nonretaliatory reasons for terminating Neal, and he is unable to come forward with specific and substantial evidence that its reasons are mere pretext, I grant summary judgment in favor of the Air Force on Neal's remaining claim.

IT IS THEREFORE ORDERED that the Air Force's motion for summary judgment **[ECF No. 70] is GRANTED.**

IT IS FURTHER ORDERED that Neal's motion for summary judgment **[ECF No. 72] is DENIED.**

**The Clerk of Court is directed to ENTER JUDGMENT in favor of the defendants and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
January 30, 2024